| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>KIRKLAND & ELLIS LLP<br>James E. Marina<br>james.marina@kirkland.com<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Attorney for General Motors LLC and General Motors Company | Case No.: 23-12677-ABA |
| In Re: Joseph J. Ashton<br>aka Joseph Ashton<br>aka Joseph J. Ashton, Jr.<br>Denise M. Ashton<br>aka Denise Ashton<br><br>General Motors Company and General Motors LLC, (Plaintiffs)<br><br>*v.*<br><br>Joseph Ashton and Denise Aston (Defendants) | Judge: Honorable Andrew B. Altenburg, Jr.<br>Chapter: 13<br><br>Adv. Proc. No. ____________ |

## GENERAL MOTORS' COMPLAINT

Creditors General Motors Company and General Motors LLC (together, "GM") file this adversary complaint (the "Complaint" and this proceeding, the "Adversary Proceeding") to establish the non-dischargeability of amounts owed to General Motors.

### JURISDICTION AND VENUE

1. This Adversary Proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure because this matter is a proceeding to determine the dischargeability of a debt. Fed. R. Bankr. P. 7001(6).

2. This Court has jurisdiction over this Adversary Proceeding under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

3. GM does not consent at this time to the final entry of orders or judgments by this Court in connection with this Adversary Proceeding if it is determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4. Venue is proper before this Court under 28 U.S.C. § 1409, at least because this proceeding arises in or relates to the chapter 13 bankruptcy proceeding of Joseph and Denise Ashton.

5. This Court has personal jurisdiction over the Defendants at least because they have filed their bankruptcy petition in this district.

## FACTUAL ALLEGATIONS

6. GM filed suit against Debtor and Defendant Joseph Aston in September of 2020, in the United States District Court for the District of New Jersey (the "District Court Action").

7. Defendant Joseph Ashton previously served as a high-ranking officer in The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW"). The UAW is a primary bargaining unit for GM's U.S. employees. From 2010 to 2014, Mr. Ashton served as a Vice President of the UAW in the GM Department; in essence, Mr. Ashton was the UAW's point person in its negotiations and relationship with GM. In his role as Vice President of UAW's GM Department, Ashton had substantial influence over the UAW-GM Center for Human Resources ("CHR"). The CHR was established primarily to educate and train UAW-represented GM employees, and it was funded by GM.

8. In 2014, Mr. Ashton was appointed to GM's Board of Directors (the "Board"). Mr. Ashton was appointed to that seat by the UAW Trust, which had the right to appoint a member of GM's Board as a result of negotiations coming out of GM's chapter 11 bankruptcy proceeding. Mr. Ashton served on the Board from 2014 until his resignation in December of 2017. In connection with being appointed to GM's Board, Mr. Ashton completed director questionnaires, in which he attested that he would maintain GM's confidential information, comply with GM's code of conduct, and that he had not received any items of value from third parties in consideration of his service on GM's Board.

9. As part of an ongoing investigation into corruption at the UAW and FCA US, LLC ("FCA"), many UAW leaders and FCA executives have been indicted and pled guilty to various crimes arising from two distinct schemes, both of which GM alleges involve Mr. Ashton. ***First***, several UAW leaders, including Mr. Ashton, were indicted and pled guilty arising from a scheme of kickbacks extorted from vendors to the CHR. In short, as admitted, Mr. Ashton and others would steer lucrative CHR contracts to a specific vendor, and then require that vendor to pay tens of thousands of dollars in cash to Mr. Ashton and his conspirators as kickbacks. GM, which provided funding for all CHR projects, was the source of the funds that Mr. Ashton and others directed to their preferred vendor and then received through the kickbacks.

10. While serving on GM's Board, Mr. Ashton never disclosed the kickback scheme involving the CHR.

11. ***Second***, many UAW and FCA executives have been indicted and pled guilty in connection with a scheme whereby FCA directed improper payments to UAW executives through the FCA-UAW National Training Center ("NTC").[1] As alleged by GM, FCA made these

[1] The NTC was meant to be the FCA-UAW equivalent of the GM's CHR.

payments to the UAW in an effort to influence FCA's collective bargaining with the UAW. In addition, FCA used these payments to bribe the UAW to agree to terms through the collective bargaining process that were unfavorable to GM, in an effort to force GM to agree to a merger with FCA. Specific to Mr. Ashton, GM alleges that, while serving on GM's Board, Mr. Ashton disclosed confidential GM information to FCA. FCA provided bribes to Mr. Ashton (in return for this confidential information) and others through funding in bank accounts in foreign financial institutions.

12. Based on these allegations, GM filed the District Court Action asserting claims for: (1) breach of fiduciary duty; (2) fraud; and (3) fraud by omission. In short, GM alleged that Mr. Ashton made numerous material misrepresentations and omissions to GM connection with joining GM's Board. And then, when Mr. Ashton was on the Board, he breached his fiduciary duty to GM by failing to disclose his ongoing kickback scheme related to the CHR and by taking bribes through foreign accounts from FCA in return for providing GM confidential information to FCA. GM's Amended Complaint against Mr. Ashton from the New Jersey District Court is attached as **Exhibit A** (the "Amended Complaint"). GM incorporates by reference the factual allegations in Exhibit A.

13. GM pressed its suit against Mr. Ashton for nearly three years. GM pursued discovery from Mr. Ashton, but ultimately had to expend substantial resources seeking discovery from third parties given that Mr. Ashton represented that he did not have many responsive documents in his possession. In early 2023, GM had completed sufficient third-party discovery to be in a position to take Mr. Ashton's deposition. Before GM could take Mr. Ashton's deposition, Mr. Ashton filed this bankruptcy case, staying GM's suit.

14. GM has asserted in the District Court Action that damages from its claims against Mr. Ashton could run into the hundreds of millions or billions of dollars.

15. On June 9, 2023, GM filed its Proofs of Claim against the Debtors. *See* Claim Nos. 9 & 10 (the "Proofs of Claim").

## CAUSES OF ACTION

### First Cause of Action: Non-Dischargeability Under 11 U.S.C. § 523(a)(2)

16. GM's claims against the Debtors are not subject to discharge because the amounts due to GM are on account of the Debtors' receipt of money from GM "obtained by false pretenses, a false representation or actual fraud." 11 U.S.C. § 523(a)(2).

17. As detailed in the Amended Complaint, Mr. Ashton gained his seat on GM's Board of Directors by intentionally or recklessly making numerous material misrepresentations to GM, including through false information provided in his director questionnaires.

18. In addition, Mr. Ashton likewise gained his seat on GM's Board of Directors by intentionally or recklessly failing to disclose material facts that he had an obligation to disclose, including but not limited to the ongoing bribery schemes described above.

19. Because the Debtors inflicted damage on GM through false pretenses, a false representation, and/or actual fraud, GM's claims are not subject to discharge under 11 U.S.C. § 523(a)(2).

### Second Cause of Action: Non-Dischargeability Under 11 U.S.C. § 523(a)(4)

20. GM's claims against the Debtors are not subject to discharge because the amounts due to GM are on account of the Mr. Ashton's "fraud or defalcation while acting in a fiduciary capacity. . . ." 11 U.S.C. § 523(a)(4).

21. As detailed in the Amended Complaint, Mr. Ashton served on GM's Board and, in that role, owed fiduciary duties to GM. While serving on GM's Board and owing those fiduciary

duties, Mr. Ashton failed to disclose an ongoing bribery scheme with respect to the CHR. In addition, Mr. Ashton, in breach of his fiduciary duty, provided confidential information to GM's competitor in return for bribes.

22. Because the Debtors inflicted damage on GM was through fraud and defalcation while serving in a fiduciary capacity, such amounts are not dischargeable under 11 U.S.C. § 523(a)(4).

**REQUEST FOR RELIEF**

WHEREFORE, GM prays for the following relief

(a) A final determination that amounts owed by the Debtors to GM are not subject to discharge under 11 U.S.C. § 523(a)(2).

(b) A final determination that amounts owed by the Debtors to GM are not subject to discharge under 11 U.S.C. § 523(a)(4).

(c) Any other relief the Court deems just, fair, necessary, or equitable.

Dated: July 5, 2023

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: *s/James E. Marina*

James E. Marina (N.J. Bar No. 050791996)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
james.marina@kirkland.com

Jeffrey L. Willian, P.C. (admitted *pro hac vice*)
Hariklia Karis, P.C. (admitted *pro hac vice*)
Stacey G. Pagonis (admitted *pro hac vice*)
Casey McGushin (admitted *pro hac vice*)

300 North LaSalle
Chicago, Illinois 60654
jeffrey.willian@kirkland.com
hariklia.karis@kirkland.com
stacey.pagonis@kirkland.com
casey.mcgushin@kirkland.com

*Attorneys for Creditors General Motors LLC and General Motors Company*